## LINDSAY, AS GUARDIAN, ETC., V. NORRILL.

1. HOMESTEAD EXEMPTION: *Act of 1852 revived by the constitution of 1874.*

    As to contracts made before the adoption of the constitution of 1868, the homestead exemption act of 1852 (*Gould's Digest, p.* 504), with its old construction by this court was revived by section 1, schedule to the constitution of 1874, and made irrepealable by legislative action, although it had been dormant during the existence of the constitution of 1868.

2. SAME: *Where actual homestead, selection unnecessary under act of* 1852.

    Where there is an actual homestead under the act of 1852, no particular mode is required to declare the owner's intention to dedicate it as such; the fact being shown, a sale of it under execution would be unlawful.

35—36

Lindsay, as Guardian, etc., v. Norrill.

3. EXECUTION: *Limitation on issue of:  When enjoined:  Payments.*
   The period during which an execution is enjoined, is not to be estimated
   as part of the ten years allowed for issuing it; and intermediate execu-
   tions and payments on the judgment, form new points for the running
   of the statute.

4. HOMESTEAD: *Husband's right to sell or waive exemption.*
   In this state a husband may sell the homestead without any assent of his
   wife, except for the purpose of relinquishing her dower; but the policy
   of the exemption laws precludes him from making any agreement to
   waive his exemption at the time of contracting a debt.  Nor could he,
   under the act of 1852, waive his exemption after the levy of an execu-
   tion.  But this would not apply to the constitutional exemption of
   ·1868.

APPEAL from *Jefferson* Circuit Court.
Hon. X. J. PINDALL, Circuit Judge.

REPORTER'S STATEMENT.

On the thirtieth day of November, 1866, W. R. Robinson
recovered, in Jefferson circuit court, judgment against
John S. Tucker for $2,014, on which execution was issued
on the seventh of April, 1869, and levied on certain lands
of Tucker, and they were sold by the sheriff for $900, and
were redeemed by Tucker on the ninth of May, 1870.  On
the twenty-ninth day of November, 1872, another execution
was issued on the same judgment, but was restrained by a
temporary restraining order from said circuit court.  On
the sixth day of December, 1875, the injunction was dis-
solved, and afterwards, on the seventh day of January,
1876, another execution was issued and levied on the lands,
and they were sold for $50, and redeemed by Tucker.  On
the twelfth day of February, 1877, an alias execution was
issued and levied on the lands, and on the thirteenth day of
March, 1877, they were sold for satisfaction of the execu-
tion, and were purchased by Merrill, and he received the

sheriff's deed for them on the fourteenth day of March, 1878. On eighty acres of the lands sold and conveyed by the sheriff, Tucker, with his two children, were residing at the time of the sale. Afterward he died at his residence on this tract, in September, 1877; and from thence Lindsay, as their guardian, and said minor children, continued to reside on it, until the deed was made to Merrill, in March, 1878, and rented part of it to one Marshall, for the year 1878. About the date of the deed to Merrill, Lindsay, the guardian, put the children at school at Pine Bluff, and Merrill took possession of this, and other lands, comprising a large farm of Tucker, under his purchase, and received from Marshall the rent for 1878, under an agreement with Lindsay to pay it over to him for his wards, if they were entitled to it by law. Tucker never at any time claimed or asserted any homestead right to any part of the land. He intended to redeem them from the sale, but was prevented by his death.

This action was brought by the guardian, to recover from Merrill the amount ($128) of the rent received from Marshall; and upon the trial the court, sitting as a jury, found the facts as above stated, and declared as the law of the case, that as Tucker made no claim of homestead on the land in his lifetime, his minor children could assert none afterwards; and that Merrill was entitled to the possession and the rents from the execution and delivery of his deed on the fourteenth day of March, 1878; but was liable for the rent to that date, amounting to $25.55; for which sum judgment was rendered against him. Lindsay, after motion for new trial overruled, took a bill of exceptions and appealed to this court.

*Bell & Elliott*, for appellant:

Homestead right governed by law as it existed previous

Lindsay, as Guardian, etc., v. Norrill.

to constitution of 1868. No scheduling necessary. 22 *Ark.*, 400; *Cook v. McChristian*, 4 *California*, —.

Minors can not abandon their right, and actual occupancy is not necessary. 29 *Ark.*, 280, 633.

There was no judgment lien, as it was rendered in 1866, and was barred by the statute of limitations. The executions did not revive it. *Code, sec.* 2610 *Gantt's Digest;* also, 4128. The execution could not issue without a revival of the judgment. 62 *Mo.*, 549.

. The sale was a nullity. *Free. on Ex.*, *sec.* 30, *p.* 41; 14 *Ark.*, 524; 20 *Iowa*, 79; 5 *Ala.*, 188; 8 *Cal.*, 513; 26 *Cal.*, 156; 35 *Ill.*, 344.

*Martin. & Taylor,* for appellee:

Act of 1871, prescribing mode of selecting a homestead, is supplemental to act of 1852, and applies to it. No vested right in statutory exemptions. *Cooley on Const. Limitations*, 383, 479; 13 *Wis.*, 283, 238, 40; 28 *Ark.*, 487; 54 *Ga.*, 359; 56 *Ga.*, 96; *Thomp. on Homesteads, sec.* 17. It may be waived. 3 *Mich.*, 457; 10 *Ind.*, 104; 56 *Ga.*, 53; 9 *How. Pr.*, 548. And to waive the mode of claiming, waives the right. 9 *Harris*, 212; *ib.*, 194, *et seq.*

Part payment of judgment takes it out of statute of limitations. *Herman on Ex.*, *pp.* 68, 78; 9 *Mo.*, 709; 6 *ib.*, 331; 4 *Ala.*, 326; 3 *Ill.*, 441; 12 *Ark.*, 605.

Injunction stopped the statute. *Free. on Ex.*, *sec.* 28, *notes* 4, 7; 12 *Grattan, Va.*, 582; *Herman on Ex.*, *sec.* 402, *p.* 619; 72 *Ill.*, 586.

1. HOME-
STEAD EX-
EMPTION:
Act of 1852
revived by
constitu-
tion of 1874.

EAKIN, J. The judgment under which defendant claims, as a purchaser at execution sale, was rendered before the adoption of the constitution of 1868. The execution was issued after the adoption of the constitution of 1874, which provided in the first section of its schedule, that "all laws

exempting property from sale on execution, or by decree of a court, which were in force at the time of the adoption of the constitution of 1868, shall remain in force with regard to contracts made before that time." This, with regard to the class of contracts now in question, not only revived the exemption act of 1852 (*p. 504 Gould's Digest*), but made it irrepealable and unalterable by legislative action. It gave it the force of a constitutional provision from that time forth; although the act had been dormant during the existence of the constitution of 1868, which embodied exemption provisions of its own of a somewhat different nature.

The act provides that every free white citizen of this state, male or female, being a householder, or head of a family, should be entitled to a homestead exempt from sale or execution (except as hereinafter mentioned) not exceeding 160 acres of land, or one town or city lot, being the residence of said householder, or head of a family, with the appurtenance and improvements thereunto belonging." The exceptions alluded to do not touch this case. By another section the benefit of the act was in the same manner extended to the widow and children of any person entitled to such homestead at the time of his death.

This act, when formerly in force, was very carefully considered and construed by Chief Justice ENGLISH in the opinion delivered in the case of *Tumlinson v. Swinney, 22 Ark., p. 400.* The court adopted the conclusion reached in *Cook et al. v. McChristian, 40 Cal.,* quoting it freely with approbation, to the effect that the act was self-executing to vest the right in any one having an actual homestead; and that no particular mode was required to make known his intention to dedicate it as such; and that the fact being shown, a sale of it would be held unlawful.

2. No selection necessary, where there is an actual homestead.

Perhaps this prompted a change in the phraseology in

the subsequent constitution of 1868, which imported into the exempting clause the words, " to be selected by the owner tnereof," thus seeming to contemplate some act of the owner, manifesting his selection, as a pre requisite to the protection. · In pursuance of which view, the legislature, by act of twenty-eighth of March, 1871, made special provisions for the mode by which " the exemptions provided for in *Art. XII of the constitution*," should be designated, upon issuance of an execution against the owner; and this court held in *Norris et al. v. Kidd, 28 Ark., 486*, that a homestead would be lost on an execution sale, by a failure to claim it in the statutory mode.

It seems plain, however, that the statute could have had no reference to the act of 1852, for that act was then dormant. If it had been alive no provisions would have been necessary to enforce it, as none had been previously. Besides, the last act in express terms applied only to the exemptions claimed under *Art. XII of the constitution*. It is. not necessary to determine now whether it consists with the general provisions of the constitution of 1874, so as to have survived the transit from that of 1868. It suffices to say that the schedule of 1874, reviving the old act of 1852, brought it to life with its old constructions.

The plaintiffs, through their guardian, on the facts agreed, were entitled to the homestead and its rents.

Not upon the ground that the execution was barred by limitations. The period during which it was enjoined should not be estimated. Besides, there were intermediate executions and payments on the judgments, forming new points for running of the time allowed by statute.

Appellees contend that the exemption was waived by the failure of the father in his lifetime to object to the sale of the homestead under execution.

In many states the husband can not dispose of the home-stead at all without the concurrence of the wife. In these states it follows of course that he can not, by his waiver, allow an execution sale, however expressly the intention may be manifested. In this, and other states, he may sell without any further necessity for the wife's assent, than for the purpose of relinquishing her dower, which an execution sale does not effect.

4. HOME-STEAD EX-EMPTION: Right of husband to waive.

Laying aside those authorities which are based upon statutes of the former class, it, nevertheless, appears that, in all states, the policy of exemption laws in favor of heads of families, looks farther than the protection of the head himself, and contemplates the welfare of his wife, children, and immediate family dependents. Although he may voluntarily sell when supposed to be free to act with prudence and discretion, he is, in conformity with said policy, prohibited from any agreement to waive his exemption at the time of contracting a debt. This is now well settled, upon the ground that he is supposed to be under a pressure, and too much at the mercy of the lender or creditor to be safely trusted with the protection of the interests of himself and family. This undue influence may well be considered as still continuing over a debtor who is under the pressure of an execution, and who might be led to hope other indulgencies to result from declining to resist proceedings against his homestead. The supreme court of Tennessee, in the case of *Denney v. White, 2 Cald., 283,* has gone so far as to hold, in the case of exempted personal property, which the owner undoubtedly might sell, that he could not even directly and expressly waive his right of exemption against execution. It places its decision on the broad ground, not of any statutory provision for the wife's concurrence, but of the policy of the system.

The court says: "It is manifest the object and purpose

of the legislature was to extend the benefit to the family. No one, unless he was the head of a family, was entitled to the benefit of the law. If the father died, the provisions of the law extended to the mother and children." It was, in that case, conceded, by the court, that the father might barter, sell or exchange the property protected, for the benefit of the family or those interested.

Without meaning now to adopt this reasoning to its full extent, and with all its logical results, we may say that it applies, with all its force, to the act of 1852, now under consideration, and is directly in point, for the exemption in the act is imperative and unconditional. It would *not* apply to the constitutional exemptions of 1868, as heretofore decided.

Reverting to the act of 1852, and without being here required to go to the extent of the case in *2 Caldwell, supra*, we may, at least, say courts should not favor the presumption of an intended waiver, where it is neither express nor indubitably manifested.

In this case, the homestead seems to be only a small part of a very large and valuable plantation, worth four times the debt. It had been twice before sold under the same judgment, and redeemed. The last sale was made without objection, or assent, so far as regards the homestead, but with the intention of again redeeming the whole, shortly afterwards, and, pending the time for redemption, the defendant in the execution died.

This sufficiently explains why no contest was made over the sale of the homestead. Intending to redeem the whole plantation, any issue of that sort would have been needlessly litigious. The plantation was the main thing in view, and as it was thought it would be redeemed as formerly, it can not be supposed the father consented to part with the homestead, or estop himself from claiming it, in case he

could not redeem.   We can not construe this into a waiver.

A new trial should have been granted.

Reverse the judgment, and remand the cause.